**No. 13-16919**

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

ANGEL FRALEY, et al.,

        Plaintiffs-Appellees,

CMD; et al.,

        Intervenors-Plaintiffs-Appellees,

v.

WENDY LALLY, et al.,

        Objectors-Appellants,

v.

FACEBOOK, INC.,

        Defendant-Appellee.
_____

**Petition for Rehearing *En Banc* of Appellants Wendy Lally, Alec Greenhouse, Jonathan Bobak and Zachary Cochran**

On Appeal From the United States District Court
For the Northern District of California, No. 3:11-cv-01726-RS

John J. Pentz, Esq.
19 Widow Rites Lane
Sudbury, MA 01776
Tel.: 978.261.5725
Fax: 978.405.5161

## TABLE OF CONTENTS

Table of Contents…………………………………………………………...…….2

Table of Authorities…………………………………………………..……….3

Petition for Rehearing *En Banc*..................................................................4

Statement of the Case……………………………………………………………..5

Argument………………………………………………………………….....…8

I.      The Panel Decision Creates a Circuit Split With Three Other Circuits, Without Acknowledging the Adverse Precedent or the Issue on Appeal..........................................................................…8

Conclusion…………………………………………………………………14

Certificates of Compliance and Service…………..…………………….…15

# TABLE OF AUTHORITIES

**Cases** **page**

*Fraley v. Facebook, Inc.,* 966 F. Supp. 2d 939 (N.D. Cal. 2013)............10,12

*Klier v. Elf Atochem N.A., Inc.*, 658 F.3d 468 (5th Cir. 2011)....................4,8,9

*In re BankAmerica Corp. Sec. Litig.*, 775 F.3d 1060 (8th Cir. 2015)..........4,9

*Lane v. Facebook, Inc.*, 696 F.3d 811 (9th Cir. 2012)...................................10

*Marek v. Lane*, 134 S. Ct. 8 (2013)...........................................................7,11

*Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014).................................4,9

**Other Authorities**

*Principles of the Law of Aggregate Litigation* §3.07(Am. Law Inst. 2010)...7

**Petition for Rehearing *En Banc***

Rehearing *en banc* is appropriate here under Fed. R. App. Proc. 35 (B) because this appeal presents an issue of exceptional importance, and the panel majority's decision conflicts with the authoritative decisions of at least three other United States Courts of Appeals that have addressed the issue – namely, whether a court must first make the threshold finding that further distribution of a class action settlement fund to class members is impossible or infeasible before it may award a portion of that fund to a *cy pres* recipient. *Compare Fraley v. Batman*, No. 13-16819 (9th Cir. January 6, 2016) with *Klier v. Elf Atochem N.A., Inc.*, 658 F.3d 468 (5th Cir. 2011), *Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014) (Posner, J.), and *In re BankAmerica Corp. Sec. Litig.*, 775 F.3d 1060 (8th Cir. 2015).

This Court will only create a circuit split after "painstaking inquiry," but the panel here created a circuit split without even mentioning *Klier*, *Pearson* or *BankAmerica,* all of which were brought to the panel's attention in the Lally Appellants' Brief, a September 11, 2015 28(j) letter, and at the oral argument by Ted Frank.  Judge Bea's dissent acknowledges the contrary authority and  cogently makes the case for why *cy pres* should be used only when it is impossible to identify the class members, or exceedingly costly or uneconomical to distribute the settlement fund to them.  Where, as here, the

4

identified claimants will already receive $15 per claim, it is clearly possible to distribute the entire settlement fund to those same claimants by raising the payment to approximately $25 per claim.

*En banc* review is needed to reconcile these conflicting precedents, and to set forth guidelines for when *cy pres* is even permissible, and not just guidelines for which *cy pres* recipients are appropriate when the conditions for a *cy pres* distribution are met.

## Statement of the Case

This class action lawsuit against Defendant Facebook, Inc. ("Facebook") claimed that Facebook unlawfully used Class Members' names, profile pictures, photographs, likenesses, and identities to advertise or sell products and services through something called "Sponsored Stories," without obtaining Class Members' consent. Under the Sponsored Stories program, Facebook users' names and images were used without their permission to endorse products on the Facebook website. Plaintiffs alleged that this violates California Civ. Code §3344, and that each violation of the code entitles the Facebook user whose name or image was used in the Sponsored Story to the $750 statutory fine.

5

The parties settled the case soon after the district court denied a motion to dismiss Plaintiffs' claims. The district court denied preliminary approval to the proposed settlement consisting of a $10 million *cy pres* payment, and a payment of $10 million in attorneys' fees to class counsel. The court questioned whether some cases, such as this one with 150 million class member, were too big to settle.

After rejection of the first proposed settlement, the parties returned to the court three months later with a revised settlement that added no additional monetary value. Instead of the first settlement's allocation of $10 million to *cy pres* and $10 million to the attorneys, the second settlement created a unified fund of $20 million, inclusive of attorneys' fees. Class members were permitted to file claims against this fund, and, if few enough claims were submitted, each claimant would receive a check for up to $10. Because the claims rate was lower than even the parties had expected, the parties later raised this amount to $15 per class member, but reserved several million dollars of the fund for *cy pres* recipients.

Appellants objected to the settlement and class counsel's request for attorneys' fees. After the parties raised the payout to $15 per class member, but held back several million for *cy pres* recipients, Appellants objected to

6

the failure to distribute the entire settlement fund to the class, and appealed from the district court's order approving same.

A divided panel affirmed on January 6, 2016, without addressing the threshold requirements for the permissibility of *cy pres* as found by at least three other circuits, or even grappling with the district court's preposterous reasoning to support a payout to claiming class members of less than the maximum amount permitted by the settlement fund. Instead, the panel deliberately misconstrued the Appellants' issue on appeal by addressing only whether the designated *cy pres* recipients had the requisite nexus with the litigation, and not whether the threshold requirements necessitating a distribution to the "next best" class of beneficiaries had been met in the first place.

Judge Bea, in his dissent, acknowledged the contrary authority as codified in the *Principles of the Law of Aggregate Litigation* §3.07(Am. Law Inst. 2010), and cited to Justice Roberts' concurrence in the denial of *certiorari in Marek v. Lane*, 134 S. Ct. 8, 9 (2013), in which Justice Roberts articulated the need "to address more fundamental concerns surrounding the use of [*cy pres*] in class action litigation, including when, if ever, such relief should be considered."

**Argument**

I. **The Panel Decision Creates a Circuit Split With Three Other Circuits, Without Acknowledging the Adverse Precedent or the Issue on Appeal.**

The entire $20 million settlement recovered here belongs to the class, and must be paid to the class members who have come forward and made claims. Distributions to *cy pres* are permitted only when it is infeasible to send payments to individual class members, or when each class member has been made whole. Because neither of these conditions is met here, the entire $20 million fund, less attorneys' fees, should have been distributed *pro rata* to those class members who filed claims.

Every other circuit court of appeals to have considered this issue has held that there is no legal authority for resorting to a *cy pres* distribution unless it is impossible to distribute the settlement fund directly to class members. In *Klier v. Elf Atochem N.A., Inc.*, 658 F.3d 468 (5th Cir. 2011), the Fifth Circuit clarified that *no settlement money may be paid to cy pres* until every class member who has filed a claim has received 100% of the alleged damages.

> The settlement fund proceeds, having been generated by the value of the class members' claims, belong solely to the class members... Because the settlement funds are the property of the class, a *cy pres* distribution to a third party of unclaimed settlement funds is permissible "only when it is not feasible to make further distributions to class members." Where it is still

> logistically feasible and economically viable to make additional pro rata distributions to class members, the district court should do so, except where an additional distribution would provide a windfall to class members with liquidated-damages claims that were 100 percent satisfied by the initial distribution. A *cy pres* distribution puts settlement funds to their next-best use by providing an indirect benefit to the class. That option arises only if it is not possible to put those funds to their very best use: benefitting the class members directly.

*Id.* at 475.

In *Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014), the Seventh Circuit held that a *cy pres* distribution is "supposed to be limited to money that can't feasibly be awarded" to the class, and reversed the district court's award of an unclaimed $1.1 million of the settlement fund to a charity. *Id.* at 784.

In *In re BankAmerica Corp. Sec. Litig.*, 775 F.3d 1060 (8th Cir. 2015), the Eighth Circuit expressly adopted Section 3.07 of the American Law Institute's *Principles of the Law of Aggregate Litigation* as a rule of decision for *cy pres* distribution, and held that it was reversible error for unclaimed monies in the settlement fund to be distributed as *cy pres* when class members had not been fully compensated, as determined by the allegations of the complaint, and it was feasible to augment payments to claiming class members, even though the settlement fund had already gone through two distributions to the class. *Id.* at 1063-66. The Eighth Circuit quoted

9

approvingly from *Klier, supra*, the proposition that the settlement funds are the property of the class, and may be distributed to *cy pres* only when further payments to identified class members would constitute a windfall. *Id*. at 1064.

Rather than attempting to distinguish this case or reconcile it with the authorities cited above, the panel majority ducked the issue by pretending that the dispute on appeal is about the *identity* of the *cy pres* recipients, rather than the propriety of resorting to *cy pres* in the first place.[1] The majority cited only to *Lane v. Facebook*, *Inc*., 696 F.3d 811 (9th Cir. 2012), for the proposition that "we have previously approved of class action settlements incorporating *cy pres* distribution of unclaimed funds, as long as an appropriate nexus existed between the issues underlying the case and the *cy pres* recipients." Memorandum Opinion at p. 7.

This may have been an adequate disposition if the issue on appeal had been the appropriateness of the particular *cy pres* recipients, rather than the appropriateness of resorting to *cy pres* in the first place. *Lane* was a case limited to the former issue, which is why Justice Roberts concurred in the denial of *certiorari* in that case:

---

[1] The recipients include several law schools' law and technology programs. 966 F. Supp. 2d 939, 946 n.7.

> Marek's challenge is focused on the particular features of the specific *cy pres* settlement at issue. Granting review of this case might not have afforded the Court an opportunity to address more fundamental concerns surrounding the use of such remedies in class action litigation, including when, if ever, such relief should be considered.

*Marek v. Lane*, 134 S. Ct. at 9.

Here, in contrast to *Lane*, the very propriety of resort to *cy pres* distribution in this case was squarely raised on appeal by the Lally Appellants and others. Therefore, it was disingenuous for the majority to cite to *Lane* as if this appeal presents simply a regurgitation of the issues presented in that earlier appeal.

Judge Bea was much more honest in his thoughtful dissent, in which he demonstrated that he understood the Appellants' arguments on appeal. "But in this case, the district court had no need to invoke *cy pres* at all because the settlement funds can be distributed directly to class members.... [The district court] treated the *cy pres* recipients as entitled to something under the settlement agreement, rather than as substitutes for claiming class members, which contravenes the principles I outlined previously and the settlement agreement itself." Dissent at p. 4. "I see no reason why the district court could not have further increased the per-claimant distribution

11

to avoid giving a huge windfall to the charities identified as *cy pres* recipients." Dissent at p. 3.

The majority also failed to address the district court's bizarre and misguided justification for not distributing the entire net settlement fund to claimants. The district court found that "the payments cannot be raised to a level that would be unfair to those class members who declined to submit claims for what they believed almost certainly would be $10 or less. The increase to $15 represents an appropriate balance between the interest in distributing as much of cash directly to class members as possible and the need to avoid creating such unfairness." 966 F. Supp. 2d at 944.

The district court clearly acknowledged the desirability of paying as much of the settlement as possible to class members, but felt compelled to balance that against something that no court has ever recognized or articulated before: the "unfairness" to non-claiming class members who failed to file a claim for their *pro rata* share of the settlement. In securities class action settlements, every class member who submits a claim form receives his or her *pro rata* share of the settlement fund, and every class member who fails to do so receives nothing. No one has ever called such a result "unfair," or held back a portion of a securities settlement fund to avoid unfairness to the non-claimants.

12

Every class member in this case had the same opportunity to file a claim for their *pro rata* share of the settlement, which necessarily would vary based upon the number of claims filed. It is unfathomable how paying out the entire settlement fund to those class members who submitted claims is unfair to those class members who elected not to do so, or how paying millions of dollars to unrelated law schools would be more fair than paying the money to people identically situated to themselves. The district court's justification for earmarking millions of dollars for *cy pres* was nonsensical, and the majority's failure to confront that defective reasoning further renders their opinion erroneous.

Each class member's liquidated damages are $750, as alleged in the Complaint. That figure constitutes the ceiling on class member recovery. Until each claimant has received $750, no amount may be paid to *cy pres*. Further distribution of the settlement fund to class members who filed claims is patently feasible. Instead of paying $15 to the 600,000 or so class members who filed claims in this settlement, each claimant could receive $25, which would fully exhaust the settlement fund net of fees and costs.

## **CONCLUSION**

For the foregoing reasons, this Court should grant rehearing *en banc* to correct the panel's errors, and to reconcile this Circuit's jurisprudence with that of other Courts of Appeal. If this Circuit is going to reject the rule followed in the Fifth, Seventh and Eighth Circuits, it should do so explicitly in a published opinion that contains sufficient detail to provide guidance to lower courts. Without national uniformity on the question of *cy pres*, class counsel will engage in forum-shopping at the expense of absent class members.

Dated: January 15, 2016

*/s/ John J. Pentz*
John J. Pentz, Esq.
19 Widow Rites Lane
Sudbury, MA 01776
Phone: (978) 261-5725
Fax: (978) 405-5161
jjpentz3@gmail.com

## CERTIFICATE OF COMPLIANCE

I hereby certify that pursuant to Circuit Rule 35-4, the attached petition for rehearing en banc is in compliance with Fed. R. App. Proc. 32(c) and does not exceed 15 pages.

This brief has been prepared in a proportionally spaced typeface using Microsoft Word 2007 in 14-point Times New Roman font.

*/s/ John J. Pentz*
John J. Pentz

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on January 15, 2016.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ John J. Pentz*
John J. Pentz