Docket Nos. 13-16819 (L), 13-16918, 13-16919,
13-16929, 13-16936, 13-17028

*In the*

# United States Court of Appeals

*for the*

# Ninth Circuit

———————— ◆ ————————

ANGEL FRALEY, PAUL WANG, JAMES H. DUVAL, a minor, by and through James Duval,
as Guardian ad Litem, WILLIAM TAIT, a minor, by and through Russell Tait,
as Guardian ad Litem, SUSAN MAINZER, LUCAS FUNES and INSTAGRAM, LLC,

*Plaintiffs and Appellees,*

C.M.D., T.A.B., H.E.W., B.A.W., A.D.Y. and R.P.Y.,

*Intervenors, Plaintiffs and Appellees,*

v.

K.D. and C.D., through their father, Michael Depot,

*Objectors and Appellants,*

v.

FACEBOOK, INC.,

*Defendant and Appellee.*

———————————————————

*Appeal from a Decision of the United States District Court for the Northern District of California,
No. 11-cv-01726-RS · Honorable Richard G. Seeborg*

## PETITION FOR REHEARING EN BANC

ROBERT C. FELLMETH, ESQ.
CHRISTINA M. RIEHL, ESQ.
ELISA M. D. WEICHEL, ESQ.
CHILDREN'S ADVOCACY INSTITUTE
CENTER FOR PUBLIC INTEREST LAW
University of San Diego School of Law
5998 Alcala Park
San Diego, California 92110-2492
(619) 260-4806 Telephone
(619) 260-4753 Facsimile

*Attorneys for Objectors and Appellants,
K. D. and C. D., through their father, Michael Depot*

 

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................. ii

TABLE OF ABBREVIATIONS ............................................................. iv

RULE 35(b) STATEMENT ................................................................. 1

BACKGROUND .............................................................................. 3

    A.    Plaintiff's Case ............................................................... 3

    B.    Settlement Agreement .................................................... 4

    C.    Objectors' Case .............................................................. 5

    D.    The Panel's Decision ...................................................... 6

REASONS FOR GRANTING REHEARING ........................................... 7

    I.    The Panel's Decision Authorizes the Violation of California's Statutory and Constitutional Protections ............................... 8

        a.    An Explicit Privacy Guarantee in Article I, Section 1 of the California Constitution is Directly Applicable to Private Actors Such as Facebook and Was Ignored by the Panel's Decision ............................................................ 9

        b.    The Settlement's Blanket Waiver Violates California Statutory Protections for Children and should not have been approved by the Panel ..................................... 10

    II.    The Panel's Decision Ignores Precedent Regarding the Appropriate Role of a Court in Approving a Settlement that is the Result of Forced Collusion ........................................... 12

CONCLUSION ............................................................................... 15

CERTIFICATE OF COMPLIANCE ...................................................... 16

MEMORANDUM

CERTIFICATE OF SERVICE

i

# <u>TABLE OF AUTHORITIES</u>

## CASES

*Brooks v. State Bd. of Elections,*
  848 F. Supp. 1548 (S.D. Ga. 1994) ................................................................8

*Dennis v. Kellogg Co.,*
  697 F.3d 858 (9th Cir. 2012) ...............................................................2, 7

*Gipson v. Davis Realty Co.*
  (1963) 215 Cal.App.2d 190 ...............................................................12

*Grunin v. Int'l House of Pancakes,*
  513 F.2d 114 (8th Cir. 1975) ...............................................................7

*Hanlon v. Chrysler Corp.,*
  150 F.3d 1011 (9th Cir. 1998) ...............................................................12

*In re Beef Industry Antitrust Litigation,*
  607 F.2d 167 (5th Cir. 1979) ...............................................................7

*In re Bluetooth Headset Prods. Liab. Litig.,*
  654 F.3d 935 (9th Cir. 2011) ...............................................................2

*Officers for Justice v. Civil Service Comm'n,*
  688 F.2d 615 (9th Cir. 2011) ...............................................................8

*Perfect 10 v. CCBill,*
  340 F.Supp.2d 1077, *as reversed and affirmed at*
  481 F.3d 751 (9th Cir. 2007) ...............................................................10

*Robertson v. Nat'l Basketball Ass'n,*
  556 F.2d 682 (2nd Cir. 1977) ...............................................................6, 7, 8

*Sheehan v. SF 49ers*
  (2009) 45 Cal.4th 992 ...............................................................9

*Sisco v. Cosgrove*
  (1996) 51 Cal.App.4th 1302 ...............................................................12

*Sparks v. Sparks*
  (1950) 101 Cal.App.2d 129 ...............................................................11

## CONSTITUTIONS

California Constitution, Article I, Section 1 ..............................................................1

## STATUTES AND RULES

Business & Professions Code § 17200 *et seq* ...........................................................3

California Civil Code § 3344 ...................................................................*passim*

California Family Code § 6701 ......................................................................11, 12

Fed. R. App. P. 35 ........................................................................................1

Fed. R. App. P. 40 ........................................................................................1

Fed. R. Civ. P. 23 ......................................................................................1, 4

## OTHER AUTHORITIES

*Judges! Stop Deferring to Class Action Lawyers*, 2 U. MICH. J.L.
REFORM 80-90 (2013) ....................................................................................8

## TABLE OF ABBREVIATIONS

**Defendants:**      Defendants-Appellee, Facebook, Inc.

**OBr. __:**      For a cite to Appellant's Opening Brief, "OBr. __" is to the page of the brief

**ER__:**      For a cite to the Excerpt of Record, "ER __" is to the page of the Record

**Op. __:**      For a cite to the Panel Decision, "Op. __" is to the page of the Memorandum of the Panel Decision

## **PETITION FOR REHEARING EN BANC**

Objectors respectfully petition this Court for rehearing or rehearing en banc under Rule 35 and 40 of the Federal Rule of Appellate Procedure.

## **RULE 35(b) STATEMENT**

The Panel's published decision raises questions of exceptional importance and conflicts with this Court's prior decisions.

The Panel's decision approves as "fair, adequate and reasonable" (as required under Fed. R. Civ. P. 23(e)) a settlement agreement which includes as a central feature a blanket waiver that cedes to a commercial third party (Facebook) the right to capture, rearrange and republish what children's postings. This blanket waiver covers more than 10 million American teens.  It allows capture of their postings (including photos) by Facebook, editing, and republication to potentially large numbers of friends and strangers – without prior consent or even notice to the child or parent. That blank check expropriation occurs notwithstanding technology for electronic notice and consent instantly, and at virtually no cost to Facebook. The direct impact of this settlement approval – within its four corners -- is arguably more profound than a rather large number of published appellate precedents.

The blanket waiver approved by the Panel violates specific statutory provisions and also the "inalienable" privacy right of Article I, Section 1, of the

1

California Constitution enacted by the electorate. Facebook concedes that California law does apply. (Second Amended Complaint ¶ 48, ER 516-517.) This seminal issue was not raised by counsel for the child subclass at any point, and was not considered when the proposed settlement was created. (OBr. 51)

Further, the Panel's ruling ignores problems in the method of resolution. The consequences stemming from the posture of the settling parties led Angel Fraley, the initial subclass representative, to affirmatively disavow the settlement and withdraw. (OBr. 34.) It caused several *cy pres* recipients to refuse hundreds of thousands of dollars rather than be associated with it. (OBr. 35.) It spawned *amicus* petitions by public interest and child advocacy groups, including the American Academy of Pediatrics. These objectors would hardly be ardently petitioning if there were anything "adequate" about settlement for the subclass.

The Panel's Decision conflicts with this Court's prior decisions in *Dennis v. Kellogg Co.,* 697 F.3d 858 (9th Cir. 2012); see also *In re Bluetooth Headset Prods. Liab. Litig.,* (9th Cir. 2011) regarding the role a court must play in determining whether a settlement agreement is fair, reasonable, and adequate when the posture of the parties in the case indicates that a more probing inquiry may be required. Here, a rare exacerbating feature was neither addressed nor considered, namely the repeated threats by Facebook of serious personal liability for the child subclass representatives. (OBr. 36-38.) Due to a fee shift statute (California Civil Code

§ 3344) that could allow Facebook to collect its fees from the plaintiffs, the subclass representatives faced millions in liability – credit ruination for them and profound implications for their counsel should they refuse the "blanket waiver" offer and lose on that claim.

Given the national application of this privacy decision to over 10 million American teens; the illegality of the blanket waiver agreed to; the Panel's failure to even consider the applicable Constitutional issues directly on point; and the unique conflicts faced by counsel, this case warrants serious inquiry and reconsideration.

Respectfully, full Court review is necessary to resolve these issues and conflicts.

## BACKGROUND

### A. Plaintiffs' Case

Procedurally, this underlying class action lawsuit was filed by plaintiff Angel Fraley and her co-Plaintiffs ("Plaintiffs") against Facebook in superior court in March, 2011, and later removed by Facebook to the U.S. District Court for the Northern District of California.

 This class action lawsuit was brought purportedly to protect subscribers' rights of privacy, citing California Civil Code § 3344 and violations of California's Unfair Competition Law, Business & Professions Code § 17200 *et seq.* In addition

3

to the class of Facebook subscribers is a subclass who are children. The class and subclass were provisionally certified by the District Court as a class for settlement purposes only, and without contested litigation. (OBr. 16.)

### B. Settlement Agreement

The settlement agreement was reached before the class was certified or class representatives and counsel were found to be adequate under Federal Rule of Civil Procedure 23. (OBr. 3.) Under the terms of the Settlement Agreement, Facebook would be allowed to amend its "Statement of Rights and Responsibilities" to include the following new statement:

> **You give us permission to use your name, profile picture, content, and information in connection with commercial, sponsored, or related content (such as a brand you like) served or enhanced by us. This means, for example, that you permit a business or other entity to pay us to display your name and/or profile picture with your content or information. If you have selected a specific audience for your content or information, we will respect your choice when we use it.**
>
> **If you are under the age of eighteen (18), or under any other applicable age of majority, you represent that at least one of your parents or legal guardians has also agreed to the terms of this section (and the use of your name, profile picture, content, and information) on your behalf.** (Amended Settlement and Agreement and Release ¶ 2.1(a), ER 299.)

This is not a *bona fide* "opt in" system necessary for lawful child and parental consent. It is a disingenuous "opt out" arrangement that delegates

categorically advance capture and republication rights to a commercial third party.[1]

Of particular concern, it is a waiver into the Internet, where the audience receiving

it cannot be easily reached or identified for correction or explanation and where it

will remain accessible by search engines for decades.

### C. Objector's Case

At the heart of the case for Appellants is the District Court's approval of a

"blanket waiver" in Facebook's lengthy terms and conditions that purports to

constitute automatic consent to its expropriation of Plaintiffs' names, photographs,

likenesses, and identities, to rearrange and then transmit them to other subscribers.

Presently, the alleged consent is channeled into the Sponsored Stories (or similar)

program to advertise products, services, or brands for a commercial purposes.  But

it provides no limitation whatever, and certainly the commercial motivations of

Facebook are not protective of teen privacy interests, as outlined in the American

Academy of Pediatrics and other *amicus* briefs.   Appellants, members of the

subclass of children, object to the Settlement Agreement on the basis that it fails to

---

[1] The purported limitation allowing teens to circumscribe the group who will
receive the retransmissions ("if you have selected a specific audience, we will
respect it") is disingenuous, requiring teens to somehow know about that right and
be able to navigate and find it, with a default setting of "public." This problem is
exacerbated by a lack of any advance consent to the teens or parents of such
republication, nor even advance notice that it will happen.

meet the applicable test of "fair, reasonable, and adequate," and is the product of extraordinary, perhaps unprecedented, forced collusion as described *infra*.

### D. The Panel's Decision

The Panel's Decision affirms the District Court's approval of the Settlement Agreement. The Panel approved the monetary award to the Plaintiff Class (Op. 7) and the distribution of a *cy pres* award (*id.*). The Panel Decision leaves open the issue of whether the *Children's Online Privacy and Protection Act* ("COPPA") preempts California Civil Code § 3344 (Op. 9-10) and approved the District Court's decisions regarding attorneys' fees (Op. 10-11).

The Panel Decision indicates there is no structural conflict between the subclass of minors because the children's claims were not significantly stronger than the claims of the adults (Op. 9) but **does not** discuss the forced collusion that occurred between the named plaintiffs and the defendants in affirming the District Court's admitted limited review approach,

The Panel Decision further found that the approved Settlement Agreement does not "clearly authorize continued violations of the law." (Op. 8.)  Relying on the District Court's *laissez faire* approach (OBr. 21) to analyzing the fairness of a Settlement Agreement, the Panel decided the Settlement Agreement did not authorize any "'*clearly* illegal' conduct" (Op. at 8, citing *Robertson v. Nat'l*

*Basketball Ass'n,* 556 F.2d 682 (2nd Cir. 1977) but did not even address the right to privacy found in California's Constitution, and did not adequately address California's statutory protections found in California Civil Code § 3344.

## REASONS FOR GRANTING REHEARING

The four corners of this case define the privacy rights of millions of teens. To be sure, the general rule is that courts should provide deference to an agreement between consenting parties. *See e.g., Dennis v. Kellogg Co.,* 697 F.3d 858, 864 (9th Cir. 2012). But this general rule has limits. A court may not approve "a settlement that authorizes the continuation of clearly illegal conduct" (*Robertson v. Nat'l Basketball Ass'n,* 556 F.2d 682, 686 (2d Cir.1977). Further, a court should not defer to an agreement when the totality of the circumstances does not point to reasonableness (*Grunin v. Int'l House of Pancakes,* 513 F.2d 114, 124 (8th Cir. 1975)), or there is evidence of collusion and the class action settlement "is used to benefit some individuals at the expense of absent members" (*In re Beef Industry Antitrust Litigation* 607 F.2d 167 at 174 (5th Cir. 1979). The Panel decision applied the general deferential standard without regard to the specifics that here commend rigorous examination of the terms of settlement, actual impacts, applicable law, and procedural flaws involving forced collusion and conflicts -- with the same counsel representing both the adult class receiving payments and the teen subclass

7

– for its part accepting waiver to privacy and consent to all intervention and stipulating to (purported) parental consent.

## I.    The Panel's Decision Authorizes the Violation of California's Statutory and Constitutional Protections.

Courts have long recognized that "a settlement that authorizes the continuation of clearly illegal conduct cannot be approved." *Robertson v. Nat'l Basketball Ass'n,* 556 F.2d 682, 686 (2d Cir. 1977); "[a] court must examine the totality of the circumstances and must determine, under that broad inquiry, whether the proposed settlement is fair, adequate, reasonable, *and legal." Brooks v. State Bd. of Elections,* 848 F. Supp. 1548, 1552 (S.D. Ga. 1994) (emphasis added); *see also Officers for Justice v. Civil Service Comm'n,* 688 F.2d 615, 625 (9th Cir. 2011); and *Judges! Stop Deferring to Class Action Lawyers*, 2 U. MICH. J.L. REFORM 80-90 (2013). While the Panel Decision declared the "settlement does not clearly authorize continued violations of the law" (Op. 8), there was no analysis of this erroneous position. Because the Settlement Agreement here actually would "authorize the continuation of clearly illegal conduct," *Robertson,* 556 F.2d at 686, it is not appropriately affirmed.

**a. An Explicit Privacy Guarantee in Article I, Section 1 of the California Constitution is Directly Applicable to Private Actors Such as Facebook and was Ignored by the Panel's Decision.**

The California Supreme Court recently noted that unlike most constitutional protections applying only to state action, California's Constitutional "privacy clause **applies to private entities**" (*Sheehan v. SF 49ers* (2009) 45 Cal. 4th 992, 999, emphasis added). Indeed, the *Sheehan* case clarifies that one of the two core privacy interests protected is "precluding the dissemination or misuse of sensitive or confidential information ('informational privacy')." *Id.*

There is no question that California law controls the actions of Facebook and its users. (Second Amended Complaint ¶ 48, ER 516-517.)  It is hard to imagine how the wide dissemination of personal child postings to potentially millions is not sufficiently germane for consideration.  As noted above, this Settlement Agreement purports to provide categorical consent by 10 million plus current teen subscribers.  Consent is here accomplished notwithstanding "capacity" issues and California law explicitly prohibiting children from assigning property to "agents" or to "delegate" to non-parental third parties rights, as discussed below. Rather than comply with the "inalienable" informational privacy right of California Constitution Article 1, Section 1, the Settlement Agreement categorically waives it with merely a notice to users that the "Rights and Responsibilities" have been amended. (OBr. 11.) In violation of basic contract law, there will be *nothing* in this

notice to even indicate *how*. (*Id.*) Despite this, the Panel Decision does not even mention the issue.

### b. The Settlement's Blanket Waiver Violates California Statutory Protections for Children.

California Civil Code § 3344 provides in relevant part: "Any person who knowingly uses another's name, voice, signature, photograph or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting…, without such person's prior consent, or, in the case of a minor, the prior consent of his parent of legal guardian, shall be liable …" (California Civil Code § 3344(a).)  Under the Settlement Agreement approved by the Panel, children constructively give consent in violation of California law.

California courts have held that this section "and common law rights of privacy" are not affected by the limited immunity for Internet service providers often claimed by the latter from the federal Communications Decency Act. See *Perfect 10 v. CCBill,* 340 F.Supp.2d 1077, as reversed and affirmed at 481 F.3d 751 (9th Cir. 2007). **Further, the law of the case under District Judge Koh established that the Decency Act did not immunize Facebook from the application of Civil Code § 3344.** (Order re Motion To Dismiss at 19, ER 447.).

That children lack capacity to consent to many types of contracts underlies much of our system to protect them. California law "shields minors from their lack

10

of judgment and experience and confers upon them the right to avoid their contracts in order that they may be protected against their own improvidence and the designs and machinations of other people, thus discouraging adults from contracting with them." *Sparks v. Sparks* (1950) 101 Cal.App.2d 129, 137 (citing *Niemann v. Deverich,* 98 Cal.App.2d 787).

California Family Code § 6701 echoes the common law prohibitions against enforcing contracts against minors, providing that certain types of contracts made by minors are void as a matter of law, providing an explicit prohibition on any minor signed contract that:

> (a) Give(s) a delegation of power"….or '(c) relate(s) to any personal property not in the immediate possession or control of the minor."

The proposed Settlement Agreement violates both, but Facebook claims that Family Code § 6701(a) is inapplicable because "[n]either Facebook's current Terms nor the revisions contemplated by the Revised Settlement purport to delegate to Facebook a power of agency.[2] But the Settlement Agreement purports to delegate to Facebook unfettered power to take information posted by a child, package it, and transmit it in any form and to potentially millions of recipients and for any commercial purpose, as Facebook determines. The existence of an agency relationship has the distinguishing features of "representative character and

---

[2] See (Defendant Facebook, Inc.'s Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement ("Defendant's Motion for Final Approval") at 77, ER 143.)

derivative authority" (*see, e.g., Gipson v. Davis Realty Co.* (1963) 215 Cal.App.2d 190, 207). How is this blanket waiver not a "delegation" under Family Code § 6701(a) above? Not only does it meet Webster's definition, it applies to the rationale behind the contract limitation – limiting the improvident delegation of substantial discretionary power to a third (non-parental) party. Beyond § 6701(a), what about § 6701(c) with respect to a future interest, see *Sisco v. Cosgrove* (1996) 51 Cal. App. 4th 1302, 1307? The Settlement Agreement creates just such a broad delegation as to future property. The child allegedly contracts regarding all future postings simply by subscribing (or by not unsubscribing after it receives the uninformative notice that a "change" has been made ).[3]

## II. The Panel's Decision Ignores Precedent Regarding the Appropriate Role of a Court in Approving a Settlement that is the Result of Forced Collusion.

A court must review a settlement agreement for overall fairness, and needs to show it has explored all of the factors *comprehensively* for fairness, reasonableness and adequacy. *See Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1998).

---

[3] This new waiver applies to personal property (photos, images, content, information) that may not yet exist — and that are not in the immediate possession or control of the minor. There has been no explanation how this comports with § 6701(c).

In this case, such a review is particularly compelled quite apart from its extraordinary, direct consequences for children, privacy rights, and the constitutional "Fundamental Liberty Interest" of parents. This case also raises a troubling precedent involving a unique "forced collusion" element. This factor extends beyond the background of an approval even before adequacy of representation is litigated. This conflict goes beyond the usual argument over whether attorneys' fees influenced an undue compromise (here an initial amount of $10 million while the waiver terms were negotiated).

Here, defendant Facebook directed an extraordinary threat of financial sanction at each of the teen child subclass representatives. "In every one of [the] depositions, **including the minor depositions, Facebook asked the question: 'Do you understand that you are responsible for all the fees and costs that is [*sic*] being generated in the defense of this case?**'" (Reporter's Transcript at 18,ER 42.)

This threat is based on California Civil Code § 3344 and its unusual "reverse fee shift" provision that may result in the imposition of defense fees and costs on plaintiffs where the latter do not prevail. That assessment would mean literally millions of dollars in personal liability for class representatives and even liability for class counsel. (*See* Order Granting in Part Motion for Attorney Fees, Costs and Incentive Awards at 6, ER 39.)

The threatened risk of financial obligation weighed heavy on the mind of class (and also subclass) counsel. At the hearing on the motion regarding settlement approval, lead class counsel, Mr. Arns, asked the court, "with Mr. Frank, with Mr. Fellmeth, would they be willing to take on this case, going back to 3344?  Do they want to put $20 million in trust?...Do they want to be subject to the 3344 fee and cost shifting, and take over the case?"  (OBr. 36-37.)

In order to appreciate the pattern of threats and intimidation by Facebook, we simply quote the request for admissions propounded on named Plaintiffs. We leave conclusions about its impact and import for this Honorable Court, without further comment.

> Admit that YOU are aware that if FACEBOOK is deemed the prevailing party in this lawsuit, the Court may find that YOU are legally obligated to satisfy, in whole or in part, a judgment awarding reasonable attorneys' fees and costs to FACEBOOK.

> (Declaration of Jonathan M. Jaffe in Support of Motion for Attorneys' Fees and Costs and Class Representatives' Service Awards at 3, ER 274 (emphasis original).)

The Panel Decision condoned a moribund approach to approval of the Settlement Agreement without adequately considering the fairness, adequacy, and reasonableness of a Settlement Agreement that is not, under applicable law, fair, adequate, or reasonable.

14

## CONCLUSION

For the reasons discussed above, it is respectfully imperative that the Panel Decision be reheard. The unprecedented consequences of allowing a commercial entity to limit privacy rights of millions of children through a contract most of those children (and their parents) will not see must not be taken lightly. The Settlement Agreement allowing this limitation on children's privacy rights must be approved only after an appropriately thorough evaluation by the court approving the settlement – particularly one as momentous in its direct application as is the case here.

This case needs to be remanded for independent representation of the child subclass, or at the very least, for a thorough examination of its effects ("adequacy?") given its terms, the conflict, and the collusion elements. Appellants acknowledge this case is also steeped in objections from the phalanx of those typically objecting to all settlements. It is easy to become distracted by issues of adequate notice, compensatory fund, *cy pres*, attorneys' fees, *et al*. But the issues cited above warrant your attention. This is one decision that non-publication will not cleanse or ameliorate. Its precedential, reputational and direct impact is properly a momentous concern for every Justice of this Honorable Court.

Dated:  January 20, 2016          /s/*Robert C. Fellmeth*
                                  Professor Robert C. Fellmeth
                                  Center for Public Interest Law/
                                  Children's Advocacy Institute
                                  5998 Alcala Park
                                  San Diego, CA 92110
                                  (619) 260-4806 Telephone
                                  (619) 260-4753 Facsimile
                                  cpil@sandiego.edu

## CERTIFICATE OF COMPLIANCE

I certify, pursuant to Fed. R. App. P. 32(c)(2) and Ninth Circuit Rules 35-4(a), 40-1(a) that the attached Petition for Rehearing En Banc is proportionally spaced, has a typeface of 14 points and is within the fifteen-page limit, excluding material not counted under Rule 32.

# MEMORANDUM

FILED

**NOT FOR PUBLICATION**

JAN 06 2016

UNITED STATES COURT OF APPEALS

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| ANGEL FRALEY; PAUL WANG; JAMES H. DUVAL, a minor, by and through James Duval, as Guardian ad Litem; WILLIAM TAIT, a minor, by and through Russell Tait, as Guardian ad Litem; SUSAN MAINZER; LUCY FUNES; INSTRAGRAM, LLC, | No. 13-16819 D.C. No. 3:11-cv-01726-RS |

　　　　　Plaintiffs - Appellees,

MEMORANDUM*

C.M.D.; T.A.B.; H.E.W.; B.A.W.; A.D.Y.; R.P.Y.,

　　　　　Intervenor-Plaintiffs -
Appellees,

　v.

JO BATMAN,

　　　　　Objector - Appellant,

　V.

FACEBOOK, INC.,

　　　　　Defendant - Appellee.

---

　　　*　　This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

| | |
|---|---|
| ANGEL FRALEY; PAUL WANG; JAMES H. DUVAL, a minor, by and through James Duval, as Guardian ad Litem; WILLIAM TAIT, a minor, by and through Russell Tait, as Guardian ad Litem; SUSAN MAINZER; LUCY FUNES; INSTRAGRAM, LLC, | No. 13-16918<br><br>D.C. No. 3:11-cv-01726-RS |

                Plaintiffs - Appellees,

C.M.D.; T.A.B.; H.E.W.; B.A.W.; A.D.Y.; R.P.Y.,

                Intervenor-Plaintiffs - Appellees,

 v.

JOHN SCHACHTER, on behalf of himself and his minor son S.M.S.; KIM PARSONS, on behalf of herself and her minor daughter C.B.P; ANN LEONARD, on behalf of herself and her minor daughter D.Z.; R.P., through her mother Margaret Becker; J.C., through his father Michael Carome,

                Objectors - Appellants,

  V.

FACEBOOK, INC.,

                Defendant - Appellee.

| | |
|---|---|
| ANGEL FRALEY; PAUL WANG; JAMES H. DUVAL, a minor, by and | No. 13-16919 |

through James Duval, as Guardian ad
Litem; WILLIAM TAIT, a minor, by and
through Russell Tait, as Guardian ad
Litem; SUSAN MAINZER; LUCY
FUNES; INSTRAGRAM, LLC,

        Plaintiffs - Appellees,

C.M.D.; T.A.B.; H.E.W.; B.A.W.; A.D.Y.;
R.P.Y.,

        Intervenor-Plaintiffs -
Appellees,

 v.

WENDY LALLY; ALEC
GREENHOUSE; JONATHAN BOBAK;
ZACHARY COCHRAN,

        Objectors - Appellants,

 V.

FACEBOOK, INC.,

        Defendant - Appellee.

D.C. No. 3:11-cv-01726-RS

---

ANGEL FRALEY; PAUL WANG;
JAMES H. DUVAL, a minor, by and
through James Duval, as Guardian ad
Litem; WILLIAM TAIT, a minor, by and
through Russell Tait, as Guardian ad
Litem; SUSAN MAINZER; LUCY
FUNES; INSTRAGRAM, LLC,

        Plaintiffs - Appellees,

No. 13-16929

D.C. No. 3:11-cv-01726-RS

C.M.D.; T.A.B.; H.E.W.; B.A.W.; A.D.Y.;
R.P.Y.,

              Intervenor-Plaintiffs -
Appellees,

  v.

K.D.; C.D., through their father, Michael
Depot,

              Objectors - Appellants,

   V.

FACEBOOK, INC.,

              Defendant - Appellee.

---

ANGEL FRALEY; PAUL WANG;
JAMES H. DUVAL, a minor, by and
through James Duval, as Guardian ad
Litem; WILLIAM TAIT, a minor, by and
through Russell Tait, as Guardian ad
Litem; SUSAN MAINZER; LUCY
FUNES; INSTRAGRAM, LLC,

              Plaintiffs - Appellees,

C.M.D.; T.A.B.; H.E.W.; B.A.W.; A.D.Y.;
R.P.Y.,

              Intervenor-Plaintiffs -
Appellees,

  v.

No. 13-16936

D.C. No. 3:11-cv-01726-RS

H.L.S., through her mother, Sheila L.
Shane,

        Objector - Appellant,

  V.

FACEBOOK, INC.,

        Defendant - Appellee.

---

ANGEL FRALEY; PAUL WANG;
JAMES H. DUVAL, a minor, by and
through James Duval, as Guardian ad
Litem; WILLIAM TAIT, a minor, by and
through Russell Tait, as Guardian ad
Litem; SUSAN MAINZER; LUCY
FUNES; INSTRAGRAM, LLC,

        Plaintiffs - Appellees,

C.M.D.; T.A.B.; H.E.W.; B.A.W.; A.D.Y.;
R.P.Y.,

        Intervenor-Plaintiffs -
Appellees,

THOMAS L COX, Jr.; TRACEY COX
KLINGE; KATIE SIBLEY,

        Objectors - Appellants,

  v.

FACEBOOK, INC.,

        Defendant - Appellee.

No. 13-17028

D.C. No. 3:11-cv-01726-RS

ANGEL FRALEY; PAUL WANG;
JAMES H. DUVAL, a minor, by and
through James Duval, as Guardian ad
Litem; WILLIAM TAIT, a minor, by and
through Russell Tait, as Guardian ad
Litem; SUSAN MAINZER; LUCY
FUNES; INSTRAGRAM, LLC,

              Plaintiffs - Appellees,

C.M.D.; T.A.B.; H.E.W.; B.A.W.; A.D.Y.;
R.P.Y.,

              Intervenor-Plaintiffs -
Appellees,

SAM KAZMAN,

              Objector - Appellant,

 v.

FACEBOOK, INC.,

              Defendant - Appellee.

No. 14-15595

D.C. No. 3:11-cv-01726-RS

Appeal from the United States District Court
for the Northern District of California
Richard Seeborg, District Judge, Presiding

Argued and Submitted September 17, 2015
San Francisco, California

Before: W. FLETCHER, BERZON, and BEA, Circuit Judges.

Several objectors challenge the district court's approval of a class action settlement and the court's award of attorney's fees. Objector Kazman appeals the district court's decision to deny him attorney's fees and an incentive award. We affirm.

1.    The district court did not abuse its discretion in approving a class action settlement which awarded $15 to each claiming class member, notwithstanding the possibility of a $750 statutory penalty. The monetary award of $15 was reasonable in light of the minimal (if any) harm suffered by the plaintiffs. Furthermore, an award of $750 per claiming class member could implicate due process concerns.

2.    The district court did not abuse its discretion in approving a class action settlement which authorized the distribution of unclaimed funds to *cy pres* recipients. We have previously approved of class actions settlements incorporating *cy pres* distribution of unclaimed funds, as long as an appropriate nexus existed between the issues underlying the case and the *cy pres* recipients. *See Lane v. Facebook, Inc.*, 696 F.3d 811, 821 (9th Cir. 2012). The district court did not err in finding that an appropriate nexus existed here. As the district court found, "[t]he recipient organizations focus on consumer protection, research, education

-7-

regarding online privacy, the safe use of social media, and the protection of minors—the very issues raised in plaintiffs' complaint."

3.    The settlement does not clearly authorize continued violations of the law.  When approving a settlement, a district court should avoid reaching the merits of the underlying dispute.  *Isby v. Bayh*, 75 F.3d 1191, 1198 (7th Cir. 1996); *see also Officers for Justice v. Civil Serv. Comm'n of San Franciso*, 688 F.2d 615, 625 (9th Cir. 1982).  As a result, a district court abuses its discretion in approving a settlement only if the agreement sanctions "*clearly* illegal" conduct.  *Robertson v. National Basketball Ass'n*, 556 F.2d 682, 686 (2d Cir. 1977) (emphasis added); *see also Sierra Club, Inc. v. Elec. Controls Design, Inc.*, 909 F.2d 1350, 1355 (9th Cir. 1990).  It is not clear whether Facebook's use of minors' names and likenesses in Sponsored Stories violated California law.  *See C.M.D. v. Facebook, Inc.*, No. 14-15603, 2015 WL 6575724, at *1 (9th Cir. Oct. 30, 2015) (rejecting some of plaintiffs' claims).  It is also not clear whether the settlement at issue — which provides more protection for minors from Facebook's advertising practices than existed before — violates state law.  The district court did not abuse its discretion in approving the settlement in the face of this uncertainty.

4.    There was no structural conflict of interest requiring the appointment of separate counsel for the minor subclass.  The evidence that a structural conflict

of interest existed is sparse, especially given that (1) two of the three named representatives were minors, (2) most of the injunctive relief in the settlement benefitted only the minors, and (3) the minors were free to opt out of the settlement (as, in fact, many did). *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1021 (9th Cir. 1998); *see also C.M.D.*, 2015 WL 6575724.

The objectors claim that a conflict existed because the minors had significantly more valuable claims than the adults. We have held that part of the minors' case was not meritorious, *see C.M.D.*, 2015 WL 6575724, indicating that the objectors may have exaggerated the relative strength of minor subclasses' claims as compared to the adults' claims. Furthermore, a difference in value of claims does not necessarily mean there is a structural conflict of interest requiring separate counsel. *See In re Online DVD–Rental Antitrust Litig.*, 779 F.3d 934, 942–43 (9th Cir. 2015); *Hanlon*, 150 F.3d at 1021.

5. The district court did not abuse its discretion by reasoning, in part, that the Children's Online Privacy Protection Act (COPPA) "may well" preempt the claims of the minor subclass. The district court did not decide whether COPPA actually preempts Cal. Civ. Code § 3344. Rather, the district court properly recognized that its duty was only to determine whether the proposed settlement was fair, reasonable, and adequate. Fed. R. Civ. P. 23(e). The issue of COPPA

preemption has not been resolved, and thus the district court appropriately considered it as a risk of litigation that would exist if the plaintiffs' case continued.

6.     The district court's attorney's fees award was not an abuse of discretion.  The district court properly exercised its discretion to use a percentage-of-recovery approach, *see Fischel v. Equitable Life Assurance Soc'y of U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002), and awarded an amount (25% of the net settlement funds) which matches exactly this Court's established benchmark rate.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).  Cross-checking the award with class counsel's lodestar confirms the reasonableness of the attorney's fees award.

7.     The district court did not abuse its discretion in denying Objector Kazman's motion for attorney's fees and an incentive award.  The record does not support Kazman's contention that he contributed to the district court's decision to award class counsel attorney's fees in an amount lower than requested.  The district court was concerned with the excessiveness of the requested attorney's fees long before Kazman became involved.  Kazman was also not entitled to attorney's fees for arguing that class counsel's attorney's fees should be calculated as a percentage of net (rather than gross) recovery because, as the district court found, the associated reasonable fee for preparing this argument was de minimis.  Of

Kazman's 38–page objection to the settlement agreement, only one page was
devoted to the net versus gross recovery argument.  Kazman also was not entitled
to an incentive award.  Kazman cites little authority for the proposition that
objectors are entitled to incentive awards.  Even if objectors are occasionally
entitled to incentive awards, there is no evidence that Kazman personally provided
any "service to the class."  *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157,
1163 (9th Cir. 2013).

**AFFIRMED.**

## CERTIFICATE OF SERVICE

I hereby certify that on January 20, 2016, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

s/ Stephen Moore
Senior Appellate Paralegal
COUNSEL PRESS LLC